# Wytheville

## MELVIN AUGUSTUS TOLER v. KATHRYN VIRGINIA TOLER.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*James G. Martin & Son*, for the appellant.

No appearance for the appellee.

HUDGINS, J., delivered the opinion of the court.

The only question involved in this appeal is the right of Kathryn Virginia Toler to a divorce *a mensa*, the custody of

two children and alimony. The wife instituted this suit alleging that her husband treated her cruelly, on numerous occasions struck her, and finally on June 17, 1936, in addition to other cruel treatment, "struck her on the shoulder and severely injured her," and that because of her husband's cruel treatment she was in apprehension of serious bodily injury if she continued her marital relations with him. The husband filed an answer and cross-bill in which he denied the charge of cruelty, alleged desertion and prayed for a divorce on that ground.

The evidence showed that the parties lived together as man and wife from February 20, 1930, the date of their marriage, until the spring of 1936. Two children, now three and five years of age, were born to this union. After the first six months the parties did not live together in peace and harmony, due partly to the petulant complaints or nagging disposition of the wife, and to the want of patience or forbearance on the part of the husband. Whatever the cause of the lack of harmony, the wife, on several occasions, took the children to her mother's home but after a few days she would return with the children to the husband's place of abode. Sometime in March 1936 the parties quarreled over some trivial matter. Their voices were so loud that the neighbors called the police. The wife claimed that on this occasion the husband struck her. He said that she simply lost her temper and began to "holla" and scream in a loud voice. One of the two policemen who came in response to the telephone call testified that the husband admitted striking his wife. The other policeman who was present during the whole interview testified that nothing was said about the husband striking his wife. The policemen quieted the parties and left. No other witness was called to testify concerning this incident.

On June 17th, policemen were again summoned by the neighbors to quell a disturbance between the wife and the husband. Again the wife charged the husband with striking her on the shoulder. For this quarrel or fight the husband

was arrested and at the hearing in the juvenile and domestic relations court he was found not guilty. The husband admitted that on this occasion he struck his wife but claimed that he was provoked beyond endurance. He testified that the quarrel arose because he attempted to correct his oldest daughter for smacking the other little girl. The wife resented his interference with her management of the children and over her husband's protest took them with her in another room. The husband at the time was preparing to take an examination to enable him to get a position in the Naval Reserve. After the spat with his wife over the control of the children he went into the kitchen to pursue his studies. He found the room in disorder, and the dishes unwashed. He remonstrated with his wife over the condition of the room; another quarrel ensued. The wife hit him with her fist at least four times, followed him out of the kitchen, and when he turned on the radio to drown out her voice, she struck him again, whereupon he lost his temper and struck her on the shoulder. His account of the incident is as follows: "I pulled my blow and touched her on the arm, and it was such a surprise to her that she didn't know what to do and sat down." Immediately thereafter she went out into the streets screaming, and told a number of people who had gathered outside that he had broken her arm. This account of striking the blow is not denied by the wife, or anyone else. Evidently it was accepted by the judge of the juvenile and domestic relations court.

A number of witnesses who had lived in the same apartment with these parties prior to their removal to their present abode testified that the wife was very temperamental and high strung, and that on numerous occasions they had heard her fussing at her husband and screaming without cause, so far as they knew; that the husband was a peaceful, quiet and even-tempered man, and seemed to exercise patience in dealing with his temperamental wife.

On the date of the criminal trial of the husband, the judge of the juvenile and domestic relations court attempted to

effect a reconciliation of the parties. The husband was willing, but the wife refused. After trial, and up until the time the evidence was taken in this suit, the wife continued to live in the same apartment with the husband, but occupied a separate bed room. Out of his earnings of $133 per month he paid the rent, the milk, the gas and electric light bills, and gave her a small sum each week for groceries.

■ ■ This evidence does not entitle the wife to divorce, custody of the children or alimony.

Judge Chichester, in *Butler* v. *Butler*, 145 Va. 85, 88, 133 S. E. 756, 757, said: "The law does not permit courts to sever marriage bonds and to break up households merely because husband and wife, through unruly tempers, lack of patience and uncongenial natures, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities and unwise selections, and the misconduct which will form a good ground for legal separation must be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations, rendering the association intolerable.

"The husband here was not shown to be guilty in this grave sense or to the extent that would justify desertion. When he stepped beyond the mark he did so under the most serious provocation."

In this case, while the husband may not have been justified in striking his wife, yet his forbearance was put to a severe test. Under the facts his conduct gave the wife no reasonable ground to believe that her husband would do her serious bodily harm if she continued to live with him as his wife.

■■ The statute provides that no divorce shall, "be granted on the uncorroborated testimony of the parties or either of them." (Code 1919, § 5106, as amended by Acts 1928, Ch. 126.) Not having established her charge of cruelty, the wife was not justified in refusing to become reconciled to her husband.

Considering the entire record, we hesitate to sever the mar-

ital relations without giving these parties another opportunity to become reconciled. The husband was arrested and tried for his attack upon his wife in the latter part of June. On the 18th day of July this suit was started. Perhaps if more time had been allowed to elapse after this difficulty, no suit would have been instituted. The wife has failed to establish the charges in her bill, and therefore is entitled to no part of the relief for which she prayed.

The husband filed a cross-bill praying for a divorce *a mensa* and the custody of the children. This proceeding seems to have been instituted rather hastily and before the parties had time to consider seriously the effect a separation would have upon their own lives and the lives of their children. At any rate, we are unwilling to grant either party a divorce upon the evidence introduced. If the parties continue to live separate and apart, the custody of the children becomes a vital matter. As the evidence on the subject is very meager, we are inclined to the view that the trial judge should hear further testimony before making final disposition of them.

For the reasons stated we reverse the decree and remand the cause with direction to the trial court, in case there is no reconciliation, to make further inquiry into the question of the care and custody of the infant children and to enter appropriate orders in accordance therewith.

*Reversed and remanded.*